George A. Peak, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Vesta Peak Denny (Now Vesta Peak Maxwell), Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 55178, 55179, 65219, 68021, 68065, 68066.

Promulgated December 14, 1934.

R. S. *Doyle, Esq.*, for the petitioners.
R. W. *Wilson, Esq.*, for the respondent.

OPINION.

GOODRICH: In these proceedings, which upon motion were consolidated, petitioners, who, at the times here material, were residents of Des Moines, Iowa, contest respondent's determinations of deficiencies in income tax as follows:

| Year | George A. Peak | Vesta Peak Denny (now Maxwell) |
|---|---|---|
| 1927 | $1,790.02 | $711.79 |
| 1928 | 4,144.95 | 3,678.00 |
| 1929 | 12,090.03 | 12,714.53 |
| 1930 | 10,357.02 | 12,104.70 |
| Total | 28,382.02 | 29,209.02 |

Both petitioners raise an issue respecting distributions received from an insurance company—whether such distributions were of capital or income, and whether subject to tax. Petitioner Maxwell raises a second issue, respecting the amount of deduction to which she is entitled as an allowance for depreciation on an office building.

The facts were submitted upon stipulation, supplemented by excerpts from testimony previously given before this Board in *Central Life Assurance Society of the United States, Mutual,* 18 B. T. A. 667. For the purposes of this report the facts need not be set out in full; we summarize those necessary to an understanding of the issues.

Prior to 1919, George B. Peak, the father of these petitioners, owned 1,040 of the 2,000 outstanding shares of stock of the Central Life Assurance Society. That was a so-called stock company and wrote both participating and nonparticipating policies of insurance. In that year a new corporation of the same name was organized to take over the assets, assume the liabilities and continue the business of the stock company. The new organization, however, was a so-called mutual company, and wrote exclusively participating insurance.

The transaction was consummated under a contract of May 19, 1919, between the two companies which, in part, was for the benefit

of the stockholders of the old company. It provided, *inter alia*, that the new company should segregate and manage the nonparticipating business of the old company (then amounting to about $49,000,000), annually determine the earnings on it, and, for a period of 22 years, distribute those earnings to the former stockholders of the old company pro rata. A fund of $100,000 was to be held until the end of the period when, it was estimated, all the nonparticipating policies would be liquidated, either by surrenders, or deaths of the holders. Beginning in 1921, distributions have been made in accordance with the contract.

George B. Peak died, testate, on August 24, 1923. His widow, Alice H. Peak, mother of these petitioners, renounced the will and elected to take her statutory interest in the estate. Consequently, she and petitioners each became the owner of one third of decedent's interest in the contract. In 1926, Mrs. Peak made a gift to petitioners equally of the interest she inherited in the contract. Since that time, all distributions under the contract relating to the interest owned during his life by their father, have been equally divided between petitioners.

For the purposes of the Federal estate tax the interest of George B. Peak under the contract was valued at $700,000 as of the date of his death. The distribution received by petitioners in 1928 brought the total receipts under the contract by the Peak heirs to $738,664.69, or $38,664.69 in excess of the basis above mentioned. One half of that excess, respondent has included in the income of each of these petitioners for 1928. Likewise, respondent has included in income of each petitioner for the years following 1928, one half of each annual distribution under the contract. That action gives rise to the deficiencies here in controversy.

And that action is erroneous, petitioners contend. In their view, their receipts under the contract constitute the corpus of the inheritance from their father; the distributions are of capital, not income. In other words, they regard any surplus earnings on the nonparticipating policies of the old company as an accrued, ascertained fund, subject to liquidation. They regard it as the property of the old stockholders which cannot be changed from capital to income until it, or their inherited interest in it, is sold or disposed of otherwise. Since the earnings are capital, to tax them as income upon distribution is unconstitutional. They make the same argument respecting the interest given them by their mother, adding that their receipts from that interest are in liquidation of a gift.

We cannot subscribe to that theory. The contract gives the former stockholders, including petitioners' decedent, the right to receive

annually, pro rata, any earnings there might be upon the non-participating policies during a period of 22 years. It does not assign them the policies nor the assets held in reserve back of the policies; those things belonged to the new company. Nor does it assign to them a definite fund, despite the fact that perhaps the ultimate amount of future earnings, and the period required for its realization could be forecast with some accuracy by actuarial estimate. The contract gave them only the profits upon those policies, as realized in the future. As we see it, those earnings were not capital, but income, and taxable.

The matter of ownership of that income has been a subject of prior adjudication. In *Central Life Assurance Society, Mutual* v. *Commissioner*, 51 Fed. (2d) 939, the court held (reversing 18 B. T. A. 667) that the income from the nonparticipating policies belonged, not to the new company, but to the former stockholders of the old company, and that the new company was merely a conduit, perhaps a trustee, for the purpose of collecting and passing it on to them. Consequently, the earnings on the nonparticipating policies could not be included in the income of the new company and there taxed.

The most George B. Peak had under the contract—and the most he could pass on to his heirs—was a right to receive income. He was to get his pro rata share of such earnings as there might be upon designated policies. The granting of that right to him, and his fellow stockholders, was one of the considerations of the contract. That right was property, but it produced income, and the transfer of it, whether for value, by death or by gift, could not change the character of the benefits flowing from it. See *Parker* v. *Routzahn*, 56 Fed. (2d) 730; certiorari denied, 287 U. S. 606. Cf. *Hall* v. *Burnet*, 54 Fed. (2d) 443 (reversing 17 B. T. A. 752); certiorari denied, 285 U. S. 552; *Van Meter* v. *Commissioner*, 61 Fed. (2d) 817 (affirming 22 B. T. A. 1202.)

We see no error in respondent's determination of the taxability of the distributions received by petitioners. The right to receive income acquired by petitioners' father under the contract was valued as of the date of his death, and at that value included in his estate for purposes of the tax thereon. (Sec. 302 (a), Revenue Act of 1926, as amended by the Revenue Act of 1928.) The value of that right inherited by petitioners, has been excluded from their incomes, according to their interests, as prescribed by section 22 (b) (3), Revenue Act of 1928. The income arising from that inherited right has been included, as provided by the cited section, after recovery of the basic value, as provided in section 113 (a) (5) of the same act.

Income from the inherited interest given to petitioners by their mother is subject to the same statutory provisions, and has been so treated by respondent.

If the basic value used by respondent was inadequate, as indicated by petitioners upon brief, there is no evidence here to so prove, nor to show us what the correct basis may be. We note that the stipulation indicates that respondent has included in the incomes of these petitioners the distributions payable to Alice H. Peak subsequent to 1926 upon her interest as an original beneficiary under the contract. There is no statement respecting a gift of that interest by her; consequently, we must assume that respondent correctly determined that she transferred to petitioners her original interest, as well as her inherited interest. We fail to see any applicability to this case of the principles of *Helvering* v. *Pardee*, 290 U. S. 365, as argued by petitioners.

The further issue raised by petitioner Maxwell concerns respondent's disallowance of part of the deduction claimed by her as an allowance for depreciation sustained upon the Insurance Exchange Building in Des Moines.

This building was erected by petitioners' father, George B. Peak, upon leased premises. It was still under construction at the time of his death, August 24, 1923, and was thereafter completed by these petitioners and their mother, who inherited the building. The building was operated by the three heirs as partners until January 1, 1926, when the mother, Alice H. Peak, withdrew and made a gift of her interest to petitioners.

For the purposes of determining the Federal estate tax liability, the building and leasehold were included in the estate of George B. Peak at a valuation of $500,000. On the books of the partnership, the cost of the building and equipment as of 1923 is shown as $711,665.63. Additions between that time and 1930 entered on the partnership books bring the cost in the latter year to $765,659.43. Using that cost basis, the partnership claimed an allowance for depreciation on the building in its 1930 return of $21,799.52.

Respondent allowed less—$14,815.41—because he used as a basis for depreciation, the value assigned to the building and leasehold at the time of decedent's death, adjusted for additions made thereafter up to 1930. His disallowance of a part of the depreciation allowance claimed results in tax which is a part of the deficiency petitioner contests.

We are of opinion respondent's determination is correct. By statute (section 114 (a), referring to section 113 (a) (5), Revenue Act of 1928) the basis for depreciation of real estate transmitted by

death is the fair market value thereof at decedent's death. This is the basis respondent has used. Apparently proper adjustments have been made on account of additions to the building, for petitioner points out no errors. How extensive were the additions; how near completion was the building when decedent died, the record does not tell us. Apparently there is no dispute as to a proper rate of depreciation.

We find nothing in the record to prove the basic valuation erroneous. Petitioners argue that the basic valuation used is less than construction cost, because the latter has been discounted on account of the burden of the lease. But that argument may cut both ways. It is quite conceivable that the leasehold itself was a valuable one, and that the aggregate value of it and the building on it might be in excess of the cost of both. As to the value placed on either of these assets alone, and as to the excess (if any) of the building construction cost over the value placed on it, we are not told.

Perhaps petitioners, willing to accept a low basic value for purposes of the estate tax, now desire a higher basis for depreciation, and regret the bargain. However that may be, they have not convinced us that respondent's determination of the depreciation allowance is in error; therefore we approve it.

*Judgment will be entered for the respondent.*